UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATIONSTAR MORTGAGE, LLC, | Case No. 2:15-CV-1702 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| SFR INVESTMENTS POOL 1, LLC, | |
| Defendant(s). | |

Presently before the court is plaintiff Nationstar Mortgage LLC's motion for summary judgment. (ECF No. 70). Defendants SFR Investments Pool 1, LLC ("SFR") and Suncrest Homeowners Association ("the HOA") filed responses (ECF Nos. 78, 79), to which plaintiff replied (ECF Nos. 82, 83).

Also before the court is the HOA's motion for summary judgment. (ECF No. 68). Plaintiff filed a response (ECF No. 74), to which the HOA replied (ECF Nos. 81).

Also before the court is SFR's motion for summary judgment. (ECF No. 71). Plaintiff filed a response (ECF No. 76), to which SFR replied (ECF No. 84).

**I.     Facts**

This case involves a dispute over real property located at 609 Twilight Blue Avenue, North Las Vegas, Nevada, 89032 (the "property"). (ECF No. 40).

On August 27, 2007, Tara Thompson and Joshua Thompson ("the borrowers") purchased the property pursuant to a grant, bargain, sale deed. (ECF No. 70-1). The borrowers obtained a loan in the amount of $222,559 from Countrywide Bank, FSB ("Countrywide") to finance the purchase. (ECF No. 70-2). The loan was secured by a deed of trust recorded on February 11, 2008. *Id.*; (ECF No. 70-3). The deed of trust lists Countrywide as the lender and Mortgage

Electronic Registration Systems, Inc. as the beneficiary "solely as a nominee for Lender and Lender's successors and assigns." (ECF No. 70-3). The covenants, conditions, and restrictions ("CC&R") governing the property contained a mortgage protection clause. (ECF No. 70-4).

On November 16, 2011, MERS assigned all beneficial interest in the deed of trust to Bank of America, N.A. ("BOA"). (ECF No. 70-5).

On September 12, 2012, Nevada Association Services ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,086.[1] (ECF No. 70-7). On October 29, 2012, NAS, acting on behalf of the HOA, recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $1,958.50. (ECF No. 70-8).

On November 28, 2012, the borrowers filed a chapter 7 voluntary petition in the United States Bankruptcy Court for the District of Nevada. (ECF No. 70-9).

On May 20, 2013, NAS recorded a notice of foreclosure sale, stating an amount due of $2,910.27 and an anticipated sale date of June 14, 2013. (ECF No. 70-10).

On June 14, 2013, the HOA foreclosed on the property. (ECF No. 40). SFR purchased the property at the foreclosure sale for $17,000. (ECF No. 70-11). A foreclosure deed in favor of SFR was recorded on June 25, 2013. *Id.*

On July 10, 2013, BOA assigned all beneficial interest in the deed of trust to plaintiff. (ECF No. 70-6).

On July 8, 2014, the bankruptcy court entered a final decree discharging the bankruptcy trustee and closing the borrower's chapter 7 case. (ECF No. 70-9).

On September 3, 2015, plaintiff filed the underlying complaint. (ECF No. 1). On March 15, 2017, plaintiff filed an amended complaint, alleging (1) quiet title/declaratory relief pursuant to NRS 30 *et seq.*, and NRS 40.10 [sic]; (2) declaratory relief under the Fifth and Fourteenth Amendment's due process clauses; (3) quiet title under the Fifth and Fourteenth Amendment's due

---

[1] This included "late fees, collection fees and interest in the amount of $813.00." (ECF No. 70-7).

process clauses; (4) preliminary and permanent injunction; (5) wrongful/defective foreclosure; (6) unjust enrichment; (7) negligence; and (8) negligence *per se*. (ECF No. 40).

On March 29, 2017, SFR filed counterclaims against plaintiff for (1) declaratory relief/quiet title pursuant to NRS 30.010 *et seq*, NRS 40.010, and NRS 116.3116; and (2) preliminary and permanent injunction.[2] (ECF No. 45).

On January 5, 2018, the bankruptcy court granted a retroactive annulment of the automatic stay as applied to the property. (ECF No. 86) ("IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the automatic stay with respect to the real property located at 609 Twilight Blue Avenue, North Las Vegas, Nevada, 89032; Parcel No. 139-10-411-172 is ANNULLED as of May 19, 2013.")

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to

---

[2] SFR also filed these claims as crossclaims against the borrowers. (ECF No. 45).

its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

As an initial matter, claim (4) of plaintiff's complaint and claim (2) of SFR's counterclaim will be dismissed without prejudice as the court follows the well-settled rule that claims for "injunctive relief" standing alone are not causes of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

Further, the court will dismiss claim (2) of plaintiff's complaint, which requests declaratory relief. "[A] 'claim' for declaratory relief is not a substantive cause of action at all; it is merely a prayer for a remedy." *Pettit v. Fed. Nat'l Mortg. Ass'n*, no. 2:11-cv-00149-JAD-PAL, 2014 WL 584876 (D. Nev. Feb. 11, 2014); *see Wells Fargo Bank, N.A. v. SFR Invs. Pool 1, LLC*, no. 2:15-cv-02257-JCM-CWH, 2017 WL 1902158, at *4 (D. Nev. May 9, 2017) (citing *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)); *see also Centex Homes v. Everest Nat'l Ins. Co.*, no. 2:16-cv-01275-GMN-CWH, 2017 WL 4349017 (D. Nev. Sept. 29, 2017) ("[T]he Court will interpret Plaintiff's claim for declaratory relief as a request for a remedy rather than a separate cause of action . . . .").[3] As plaintiff's second cause of action requests a remedy of declaratory relief, and is not a substantive cause of action, the court will dismiss the claim to the extent it purports to create a cause of action. *See Wells Fargo*, 2017 WL 1902158, at *4.

*a. Quiet title*

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require

---

[3] The court in *Centex* denied defendant's motion to dismiss plaintiff's claim for declaratory relief due to its interpretation of plaintiff's claim as a request for a remedy rather than a separate cause of action. 2017 WL 4349017, at *5. This court will consider the allegations within plaintiff's second cause of action to the extent it requests the remedy of declaratory relief. The court does not see a practical difference between the two approaches.

James C. Mahan
U.S. District Judge

- 5 -

any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for a party to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[4] gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

---

[4] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

James C. Mahan
U.S. District Judge

- 6 -

(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
(b) The elapsing of the 90 days; and
(c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[5] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 70-7, 70-8, 70-10, 70-11). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

---

[5] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

Plaintiff raises the following grounds in support of its motion for summary judgment: due process and *Bourne Valley*; statutorily defective foreclosure; commercial unreasonability; and SFR's failure to qualify as a bona fide purchaser. (ECF No. 70).

### 1. *Due process*

Plaintiff argues that NRS Chapter 116 is unconstitutional under *Bourne Valley*, wherein the Ninth Circuit held that the HOA foreclosure statute is facially unconstitutional. (ECF No. 70). Plaintiff further contends that *Bourne Valley* renders any factual issues concerning actual notice irrelevant. *Id.* at 8.

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate

procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Here, plaintiff has failed to show that it did not receive proper notice. Plaintiff does not argue that it lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale). Accordingly, plaintiff's challenge based on due process and *Bourne Valley* fails as a matter of law.

### *2. Statutorily defective foreclosure*

Plaintiff argues that the foreclosure sale was statutorily defective because the notices included additional fees and costs beyond the superpriority amount as defined by NRS 116.3116. (ECF No. 70 at 9) ("The notices did not even delineate a super-priority portion, or even allege that one existed."). This argument was considered and rejected by the court in *SFR Investments*:

> U.S. Bank further complains about the content of the notice it received. It argues that due process requires specific notice indicating the amount of the superpriority piece of the lien and explaining how the beneficiary of the first deed of trust can prevent the superpriority foreclosure sale. But it appears from the record that specific lien amounts were stated in the notices, ranging from $1,149.24 when the notice of delinquency was recorded to $4,542.06 when the notice of sale was sent. The notices went to the homeowner and other junior lienholders, not just U.S. Bank, so it was appropriate to state the total amount of the lien. As U.S. Bank argues elsewhere, dues will typically comprise most, perhaps even all, of the HOA lien. See supra note 3. And from what little the record contains, nothing appears to have stopped U.S. Bank from determining the precise superpriority amount in advance of the sale or paying the entire amount and requesting a refund of the balance. *Cf. In re Medaglia*, 52 F.3d 451, 455 (2d Cir.1995) ("[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right.").

334 P.3d at 418. Accordingly, the court holds that the notices in this case did not render the foreclosure sale statutorily defective.

. . .

. . .

. . .

. . .

### *3. Commercial reasonability*

Plaintiff argues that the foreclosure sale was commercially unreasonable because the "the HOA Sale price was . . . less than 10% of the fair market value of the Property,"[6] which is grossly inadequate so as to justify setting the foreclosure aside. (ECF No. 70). Plaintiff further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "while 'gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value.'" (ECF No. 70 at 12) (alterations omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[7]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a

---

[6] Here, the foreclosure sale price was $17,000 and the fair market value as estimated by plaintiff's expert was $123,000. (ECF No. 70). Therefore, the foreclosure price was 13.8% of the estimated fair market value.

[7] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

The *Shadow Wood* court did not adopt the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Here, plaintiff fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. Plaintiff's motion primarily cites the sale price at foreclosure as sufficient to justify setting aside the sale. (ECF No. 70). This argument

overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price.

Plaintiff cites the CC&Rs mortgage protection clause as evidence of "unfairness" present in the foreclosure process. (ECF No. 70). This court has ruled that language in a mortgage protection clause purporting to subordinate a HOA lien to the first deed of trust does not, without more, constitute unfairness in the context of a HOA foreclosure.[8] *See, e.g.*, *Bank of America, N.A. v. Hollow de Oro Homeowners Association*, --- F. Supp. 3d ----, 2018 WL 523354 (D. Nev. Jan. 23, 2018).

Plaintiff also argues that the foreclosure process was unfair because the HOA did not "restart[] [the foreclosure process] anew after [the borrower's] bankruptcy was discharged." (ECF No. 70). Plaintiff notes that the HOA recorded the notice of delinquent assessment and notice of default prior to the borrower's bankruptcy petition, and did not file a renewed notice after the bankruptcy discharge. *Id.* Plaintiff asserts that this "exhibit[s] gross unfairness and an incorrect calculation of the assessments owed since the amounts were partially based on assessments owed by [the borrowers] *prior to* the Bankruptcy which extinguished those amounts in the first place.[9] *Id.* (emphasis in original). Plaintiff argues that "[i]n the interest of fairness to [the borrowers], HOA and HOA trustee should have started the process over." *Id.*

Plaintiff's arguments regarding the bankruptcy proceedings do not create a genuine dispute of material fact. First, the borrowers are no longer a party to this action, and plaintiff does not demonstrate that it has standing to raise arguments on behalf of the borrowers. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (holding that in order to invoke third-party standing a plaintiff must demonstrate that the party asserting the right has a "close" relationship with the person who possesses the right and that there is a "hindrance" to the possessor's ability to assert his own

---

[8] Further, the Supreme Court of Nevada has explicitly rejected plaintiff's implied argument that a mortgage protection clause can supersede the statutory structure of NRS 116.3116. *See SFR Investments*, 334 P.3d at 418-19.

[9] Notably, plaintiff's filings do not provide evidence that the borrower's HOA debts were discharged.

interests."). Second, plaintiff does not argue or provide evidence that no superpriority lien interest existed at the time of the foreclosure.

Accordingly, plaintiff's commercial reasonability argument fails as a matter of law as it has not set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### *4. Bona fide purchaser status*

Because the court concludes that plaintiff failed to properly raise any equitable challenges to the foreclosure sale, the court need not address the parties' arguments regarding whether SFR was a bona fide purchaser for value. *See Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.3.

### *b. Plaintiff's remaining claims*

Plaintiff's remaining outstanding claims rely on its theory that the foreclosure sale was invalid. As the court holds the foreclosure sale was valid, it will grant summary judgment in favor of defendants on plaintiff's claims for wrongful/defective foreclosure, unjust enrichment, negligence, and negligence *per se*.

## IV. Conclusion

In light of the foregoing, plaintiff has not shown that it is entitled to judgment as a matter of law. Conversely, the HOA and SFR's motions demonstrate that they are entitled to judgment as a matter of law, as the property at issue transferred to SFR free and clear of the deed of trust.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's first motion for summary judgment (ECF No. 70) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 68) be, and the same hereby is, GRANTED, consistent with the foregoing.

1     IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 71) be, and the same hereby is, GRANTED, consistent with the foregoing.

    IT IS FURTHER ORDERED that SFR shall prepare and submit to the court a proposed judgment consistent with the foregoing within thirty (30) days of the date of this order.

DATED May 21, 2018.

*/s/ James C. Mahan*
UNITED STATES DISTRICT JUDGE